# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2009 JUL 27 PM 1:57

CLERK: _L. Flanders_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHARLES MACKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-039 |
| | ) | |
| RALPH KEMP, in his official capacity, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia, at the time relevant to the events he describes in his complaint,[1] commenced the above-captioned case pursuant to 42 U.S.C. § 1983. As Plaintiff's complaint was filed *in forma pauperis* ("IFP"), it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[2]

---

[1] Petitioner is now incarcerated at Hays State Prison in Trion, Georgia.

[2] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he has no means by which to pay the initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he has been unable to pay an initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

## I. BACKGROUND

Liberally construing Plaintiff's complaint, the Court finds the following. Plaintiff names Ralph Kemp, Warden of WCF, as the sole Defendant in this action. (Doc. no. 1, p. 1). Plaintiff reports that on April 13, 2009, he was placed in segregation after receiving a disciplinary report and that the cell in which he was placed was equipped with an air vent, but the vent was not connected to an exhaust system. (Id.). Plaintiff contends that in the absence of an exhaust system, he began suffering "severe headaches and nausea" because "smoke simply moved into his cell" when other inmates burned toilet paper to light cigarettes. (Id.). Plaintiff alleges that he told several prison guards and Defendant Kemp about the headaches and nausea he was suffering, but apparently nothing has been done. (Id. at 9). He also reported his symptoms to a prison nurse, who apparently told him that if his cell was not connected to an exhaust system, he would continue to experience headaches and nausea. (Id. at 9-10). Plaintiff reports that he did not file a grievance with respect to his claims because he attempted to obtain an informal grievance form from May 9, 2009, to May 15, 2009, but was told by prison officials that they were out of the forms "at the time." (Id. at 9).

As relief, Plaintiff requests a declaratory judgment stating that Defendant Kemp's failure to provide an adequate exhaust system in the segregation unit violated Plaintiff's Eighth and Fourteenth Amendment rights and contributed to and/or caused the symptoms he is experiencing. (Id. at 10). He also requests an injunction instructing Defendant Kemp "or his agents" to "immediately" provide an exhaust system in the administrative segregation unit or place Plaintiff back in the general prison population. (Id. at 11).

## II. DISCUSSION

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Indeed, under the PLRA, the Court may not inquire as to whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson v. Meadows, 418 F.3d 1152, 1155, 1156 (11th Cir. 2005), cert. denied, 548 U.S. 925 (2006).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines

3

or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155). Finally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

The administrative grievance process within the Georgia Department of Corrections is governed by SOP IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. See SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days

4

to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

Here, Plaintiff admits that he did not exhaust his administrative remedies but offers as an excuse his allegation that prison officials told him that they were temporarily out of the informal grievance forms. (See doc. no. 1, pp. 3, 9). Under the SOP, an inmate has 10 calendar days from the date he knew or should have known of the facts giving rise to the grievance to file the informal grievance. See SOP IIB05-0001 § VI(B)(5). Notably, Plaintiff was placed in segregation on April 13, 2009, but reports that he did not request an informal grievance until May 9, 2009. Thus, assuming Plaintiff knew he had a reason to file a grievance on April 13th, he admits that he waited until May 9th, well outside the 10-day period prescribed by the SOP, to even request a grievance form. Thus, even if grievance forms had been available, Plaintiff's grievance would have been untimely, and his claim against Defendant Kemp would be subject to dismissal for failure to properly exhaust his administrative remedies. See Woodford, 548 U.S. at 90, 93 (noting that the PLRA "requires proper exhaustion" and that a prisoner must comply with any administrative "deadlines and other critical procedural rules" to properly exhaust his administrative remedies).

Even assuming *arguendo* that Plaintiff did not know he had a reason to file a grievance until May 9, 2009, the 10-day period for filing an informal grievance had not

5

expired by the time he ceased his requests on May 15, 2009. Indeed, Plaintiff could have continued requesting informal grievance forms for 3 more days, see SOP IIB05-0001 § VI(B)(5), and even if forms were still unavailable at the end of the 10-day period, he could have filed for an out-of-time grievance once the appropriate forms became available, see id. § VI(C)(2) & (D). In sum, Plaintiff's argument that he could not exhaust his administrative remedies is unavailing, and the Court finds that he failed to exhaust his available administrative remedies prior to filing suit.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claim against Defendant Kemp be **DISMISSED** without prejudice for failure to exhaust administrative remedies. As Defendant Kemp is the only named Defendant in this action, the Court further **REPORTS** and **RECOMMENDS** that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 27th day of July, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

6